# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **LUIS ZAMORA AND EMILY ZAMORA, ON BEHALF OF S.Z., A MINOR CHILD,** | § § § § | |
| *Plaintiffs* | § § | **CIVIL NO. 1:19-CV-1087-SH** |
| **v.** | § § | |
| **HAYS CONSOLIDATED INDEPENDENT SCHOOL DISTRICT,** | § § § § | |
| *Defendant* | § § | |

## <u>ORDER</u>

Before the Court are Hays Consolidated Independent School District's Motion for Judgment on the Administrative Record and Motion for Summary Judgment, filed March 26, 2021(Dkt. 38); Plaintiffs' Motion for Summary Judgment Pursuant to the Administrative Record and Additional Evidence and Brief in Support, filed March 26, 2021 (Dkt. 39); Plaintiffs' Motion to Withdraw Deemed Admissions, filed April 12, 2021 (Dkt. 43); and the associated response and reply briefs. Pursuant to the parties' consent to the exercise of jurisdiction by a United States Magistrate Judge, the District Court transferred this case to the undersigned on May 6, 2020 for all proceedings and entry of judgment, pursuant to 28 U.S.C. § 636(c)(1), Federal Rule of Civil Procedure 73, and Rule CV-72 of the Local Rules of the United States District Court for the Western District of Texas.

## I.      General Background

Luis Zamora and Emily Zamora ("Plaintiffs") filed this lawsuit on behalf of their minor son, S.Z., under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2)(A); Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and Title II of the Americans With Disabilities Act ("ADA"), 42 USC § 12132. Plaintiffs allege that Hays Consolidated Independent

School District ("HCISD" or the "District") violated the "Child Find" provisions of the IDEA by failing to timely identify S.Z. as a student needing special education and related services.

## A. S.Z.'s History at HCISD

S.Z. was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") when he was in the first grade. Dkt. 1 ¶ 4.1. In October 2017, when S.Z. was 13 years old and attending Barton Middle School, he also was diagnosed with depression and an anxiety disorder, and was prescribed various medications. Dkt. 1-4. Around that time, S.Z. missed class on several occasions and began to visit the school nurse on a regular basis, complaining of headaches, nausea, and stomachaches. Dkts. 1-5, 1-6.

On October 19, 2017, Emily Zamora emailed Barton Middle School teacher Kevin Taylor to ask if S.Z. could re-take a test. Dkt. 1-3. Zamora also notified Taylor that S.Z. had been diagnosed with ADHD, but added that "he has done okay for the past couple of years without meds" and "doesn't have a 504 plan." *Id.* She further stated that S.Z. "really struggles with organizing time, tasks, and materials." *Id.*

On January 31, 2018, Barton Middle School teacher Karen Sinor notified Plaintiffs that S.Z. had failed to turn in a school project and given her the proverbial excuse that "the dog ate [my] project." Dkt. 1-9. In response, Luis Zamora told Sinor that "[w]e've been trying many strategies to get him to finish his tasks and overcome his ADHD." *Id.*

On March 6, 2018, S.Z. was picked up from school because of a headache. Dkt. 1-10. On March 7, 2018, Plaintiffs provided the school with a doctor's note from Jacqueline Fournier, M.D., recommending that S.Z. be allowed to rest in the nurse's office "for 30 minutes 1-2 times a day" if experiencing headaches, and "extra time to complete missed work this week." Dkt. 1-11.

On March 8, 2018, Emily Zamora sent Barton Middle School Assistant Principal Aaron Lloyd an email stating the following:

> My son, [S.Z.] is struggling in eighth grade with assignment completion and organizing his work. He has a[n] ADHD diagnosis, but had done fine up to this year, without accommodations. We are working with the pediatrician right now to solve his recurrent headache problems. He has missed much school, and cannot keep track of what is missing and what needs to be made up. As parents, we have been avle [sic] to monitor his work and grades in the past, but with highschool [sic] looming, I feel that we need a better way to help him keep track of these things. He is bright, and I think he wants to excel, but right now he is overwhelmed, as are we. Please can you advise us about the 504 process[.] I am familiar with elementary, but middle school is a different planet.

AR 1036.[1] Lloyd immediately responded that he would schedule a "504 meeting as soon as you would like" and requested a medical diagnosis from a physician. AR 1037. On March 19, 2018, Plaintiffs sent the District a one-page letter from S.Z.'s treating physician's assistant ("PA"), Diego Santa-Ana, stating that S.Z. was "currently diagnosed with" ADHD and that, due to "the severity of this medical condition, [S.Z.] has difficulty concentrating on assignments, tests and finishing schoolwork on time." AR 1038. Santa-Ana recommended that S.Z. "receive accommodations under section 504." *Id.*

On March 25, 2018, the District held a Section 504 meeting with Plaintiffs, teachers, and administrators to address S.Z.'s ADHD. The District recognized that S.Z. had been diagnosed with ADHD, that he suffered from some anxiety, and that he had difficulty turning work in on time. AR 1039. The District also found, however, that S.Z. had a high score on the State of Texas Academic Assessments of Academic Readiness ("STAAR") test and "had done very well on all of the Benchmarks this year." *Id.* The District's Section 504 Plan implemented the following accommodations for S.Z.: individualized structured reminders, extra time for turning in

---

[1] Citations are to the page number of the Administrative Record ("AR"). Dkt. 19.

assignments, preferential seating, short breaks when he felt overwhelmed, checking in to ensure that he was understanding, reminders to stay on task, notetaking assistance, and extra time to complete the STAAR tests. AR 1039-41. Although S.Z. continued to miss school due to headaches in April 2018, his medical records show that during that time he was "working well on current medication," had no depressive feelings, was "doing better" in school, and had only "mild stress due to educational concerns." AR 1374.

In May 2018, S.Z. missed six days of school due to headaches and nausea. Dkts. 1-18 through 1-21. Despite these absences, S.Z. ended his eighth-grade year with high grades and achieved "Masters" level scores on his STAAR tests for reading, social studies, and science. AR 1045. Additionally, S.Z. received all As and Bs on his final report card for the 2017-2018 school year, including in his advanced placement courses. AR 1046.

On August 26, 2018, S.Z. matriculated at Hays High School. On August 30, 2018, S.Z. was diagnosed with generalized anxiety disorder and headaches. Dkt. 1-24 at 3. On September 18, 2018, Plaintiffs requested that the District test S.Z. for special education and related services, i.e., conduct a full individual and initial evaluation ("FIE"). AR 1073. The following day, the District acknowledged that it had received Plaintiffs' request for special education testing and informed Plaintiffs that the District had 15 school days[2] to gather data and respond to Plaintiffs' request. *Id.* The District contacted Plaintiffs repeatedly between September 25, 2018 and October 8, 2018, to obtain their consent to evaluate S.Z., Dkt. 38-3, which Plaintiffs refused to give. Dkt. 38-3, Deposition of Emily Zamora ("Zamora Dep.") at 54:11-16, 68:13-20; AR 1071-72, 1074.

On September 21, 2018, the District received a letter from S.Z.'s PA, Santa-Ana, stating that S.Z. recently had been diagnosed with generalized anxiety disorder and headaches, in addition to

---

[2] 19 TEX. ADMIN. CODE. §89.1011(b).

his previous ADHD diagnosis. AR 1060. Santa-Ana again recommended that S.Z. "receive accommodations under section 504" because of his "difficulty concentrating on assignments, tests and finishing school work on time." *Id.* The letter did not recommend that S.Z. be tested for special education services.

On September 27, 2018, when Plaintiffs still had not given the District their consent to test S.Z. for special education services, the District held another Section 504 meeting with Plaintiffs, the District Section 504 Coordinator, and one of S.Z.'s teachers. AR 1061. The District determined that S.Z suffered from physical and mental impairments, including headaches, an anxiety disorder, ADHD, and difficulty concentrating. AR 1063. Plaintiffs allege that during the meeting, they demanded that the District refer S.Z. to special education testing, but the District refused. The District recommended that S.Z. receive these Section 504 accommodations: extra time to complete assignments, preferential seating, reminders to stay on task, daily check-ins with a campus counselor, a teacher or staff member to discuss anxiety, breaks when he was feeling overwhelmed in the classroom and to access the counselor, and access to a water bottle. AR 1063-65.

### B. TEA Proceedings

On October 5, 2018, before the 15-day deadline expired for the District to respond to Plaintiffs' FIE request and before Plaintiffs gave the District consent to perform a FIE, Plaintiffs filed a Request for a Special Education Due Process Hearing with the Texas Education Agency ("TEA"). Plaintiffs alleged that the District did not identify and evaluate S.Z. for special education and related services in a timely manner, in violation of its "Child Find" duties under the IDEA. *See Samuel Z. b/n/f Luis & Emily Z. v. Hays Consolidated Indep. Sch. Dist.*, No. 028-SE-1018 (AR 1427-31). Plaintiffs' case was assigned to Special Education Hearing Officer ("SEHO") Sandy Lowe. *Id.*

On November 14, 2018, Plaintiffs withdrew S.Z. from the District and enrolled him in Wayside Charter School. AR 999. S.Z.'s attendance records show that he 19 reported absences in the fall of 2018. Dkt. 1-29 at 2.

In January 2019, Plaintiffs consulted Dr. Rachel W. Robillard, Ph.D., who performed a Neuropsychological Evaluation of S.Z. AR 1100. Dr. Robillard diagnosed S.Z. with ADHD, Generalized Anxiety Disorder (with features of panic), "Major Depressive Disorder with anxious distress moderate," and "Specific Learning Disorder with Impairment in Writing (including dysgraphia) and moderate Emerging symptoms of Oppositional Defiant Disorder (ODD) and Obsessive-Compulsive Disorder (OCD)." AR 1117. Robillard found that S.Z.'s diagnoses made him eligible for "student support services" and recommended certain accommodations at school, including sitting near teachers, additional time to complete work, direct intervention to improve organization, being allowed to move around the classroom, and modifications of testing procedures. AR 1118-21. S.Z.'s new school, Wayside Charter School, subsequently determined that S.Z. was eligible for special education services based on his new diagnoses of emotional disturbance and major depressive disorder. AR 1270-71.

Plaintiffs submitted Robillard's Report to the SEHO on February 13, 2019. On March 21, 2019, the SEHO ordered Plaintiffs, over their objection, to make S.Z. "available to and cooperate with [the District] to conduct a full individual and initial evaluation for special education and related services within the meaning of the Individuals with Disabilities Act." AR 709. Plaintiffs returned their written consent to the District on April 3, 2019. AR 1122. The District then attempted to evaluate S.Z. to determine whether he qualified for special education services. AR 1124. Plaintiffs would not permit the District to evaluate S.Z. at his new school, however.

Accordingly, the District filed a motion with the SEHO requesting that it order Plaintiffs to allow the District to observe S.Z. at his new school. AR 907-09.

The District assembled a multidisciplinary team of evaluators to conduct the FIE, including two licensed specialists in school psychology, a licensed occupational therapist, and a behavioral specialist. AR 1124. The team evaluated S.Z. to determine whether he was "experiencing a speech language, learning deficit, and/or a physical, mental or emotional condition that requires special education services in order for the student to be successful in an educational setting." AR 1124. The team based its evaluation S.Z.'s grades and test scores, medical records, private psychologist's neuropsychological evaluation, teacher reports, the evaluators' own classroom observations, and test results from multiple educational and behavioral tests they performed on S.Z. On June 10, 2019, the District issued its 69-page Report, AR 1122-90, concluding that S.Z. "does not meet criteria for a specific disability condition" during the relevant time period, and recommended that S.Z. "continue to receive the accommodations prescribed in his 504 Plan, as these appear to be adequate in addressing Sam's current needs." AR 1189.

The District moved for summary judgment on Plaintiffs' claims on June 14, 2019. The SEHO held a hearing on the motion on July 30, 2019, and heard argument from counsel. AR 1670-1723. After considering the administrative record, briefs, and arguments submitted by the parties, the SEHO granted the District's motion for summary judgment and entered final judgment in favor of the District. The SEHO concluded that the District did not violate its Child Find responsibilities under the IDEA and did not fail to identify and evaluate S.Z. for special education and related services in a timely manner during the relevant period.[3] Dkt. 1-34 at 5.

---

[3] Under the one-year statute of limitations contained in 19 TEX. ADMIN. CODE § 89.1151(c), the SEHO determined, and the parties agree, that the relevant time period under the IDEA to determine whether S.Z. was eligible for special education services was October 5, 2017 through November 27, 2018. AR 885-86.

### C. Plaintiffs' Claims and the Parties' Motions

On November 8, 2019, Plaintiffs filed this lawsuit appealing the SEHO's decision, alleging that the District violated its Child Find obligations under the IDEA, which requires the District to identify, locate, and evaluate all children with disabilities to ensure they receive needed special-education services. Plaintiffs further allege that the District's failure to fulfill its Child Find duties in a timely manner denied S.Z. a Free Appropriate Public Education. Plaintiffs also allege that the District's failure to provide S.Z. equal access to educational services and benefits violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), and Title II of the Americans With Disabilities Act ("ADA"), 42 USC § 12132. Plaintiffs ask the Court to enter an order reversing the SEHO's decision and awarding them compensatory damages, as well as attorney's fees and costs.

Plaintiffs and the District have filed cross-motions for summary judgment. Having considered the motions, the associated response and reply briefs, the administrative record, and the additional evidence submitted by Plaintiffs, the Court makes the following rulings.

## II.     Legal Standards

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.,* offers states federal funds to assist in educating children with disabilities. *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993 (2017). In exchange for the funds, a state pledges to comply with a number of statutory conditions. Among them, the state must provide a free appropriate public education, or FAPE, to all eligible children. § 1412(a)(1). A FAPE, as the Act defines it, includes both "special education" and "related services." § 1401(9). "Special education" is "specially designed instruction . . . to meet the unique needs of a child with a disability"; "related services" are the support services "required to assist a child . . . to benefit from" that instruction. §§ 1401(26), (29). A state covered by the IDEA must provide a disabled

child with such special education and related services "in conformity with the [child's] individualized education program," or IEP. Section 1401(9)(D).

Under the IDEA's "Child Find" provision at issue here, states are obligated to "identify, locate, and evaluate all children with disabilities residing in the State to ensure that they receive needed special-education services." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009) (quoting § 1412(a)(3)(A) and citing § 1412(a)(10)(A)(ii)) (cleaned up). The Child Find obligations in the IDEA arise when a school district "has reason to suspect a disability coupled with reason to suspect that special education services may be needed to address that disability." *El Paso Indep. Sch. Dist. v. Richard R.*, 567 F. Supp. 2d. 918, 950 (W.D. Tex. 2008). "If a determination is made that a child has a disability and needs special education and related services, an IEP must be developed for the child." 34 C.F.R. § 300.306(c)(2); *see also* 20 U.S.C. § 1414(d)(2)(A).

If a parent is dissatisfied with a school district's evaluation or educational placement of a child, the parent may file a due process complaint before an impartial hearings officer. 34 C.F.R. § 300.507(a)-512. Any party aggrieved by a hearings officer's findings and decision may bring suit in federal district court. 20 U.S.C. § 1415(i)(2)(A).

Under the IDEA, a federal district court's review of a state hearing officer's decision is "virtually *de novo*." *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir. 1993). A court must (1) receive the records of the administrative proceedings; (2) hear additional evidence at the request of a party; and (3) base its decision on the preponderance of the evidence and grant such relief as the court determines to be appropriate. *Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 966 (5th Cir. 2016) (quoting 20 U.S.C. § 1415(i)(2)(C)). "The district court is required to accord 'due weight' to the hearing officer's findings, but it must ultimately reach an independent decision based on the preponderance of the evidence." *Id.* (quotation omitted).

Unlike in a traditional summary judgment context, the existence of a disputed material fact will not defeat a motion for summary judgment on an IDEA claim. *Seth B.*, 810 F.3d at 966; *T.W. by K.J. v. Leander Indep. Sch. Dist.*, No. AU-17-CA-00627-SS, 2019 WL 1102380, at *2 (W.D. Tex. Mar. 7, 2019). Instead, the court looks to "whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." *Seth B.*, 810 F.3d at 966. In addition, in an appeal of a hearing officer's decision, the party challenging the administrative decision bears the burden of persuasion, in this case the Plaintiffs. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005); *P.P. v. Nw. Indep. Sch. Dist.*, 839 F. App'x 848, 857 (5th Cir. 2020); *Seth B.*, 810 F.3d at 972.

When reviewing a school district's decision under the IDEA, the district court's role is purposefully limited:

> Congress left the choice of educational policies and methods where it properly belongs—in the hands of state and local school officials. Our task is not to second guess state and local policy decisions; rather it is the narrow one of determining whether state and local school officials have complied with the Act.

*White ex rel. White v. Ascension Par. Sch. Bd.,* 343 F.3d 373, 377 (5th Cir. 2003). Accordingly, courts cannot "substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982).

### III.    Analysis

Plaintiffs and the District both move for summary judgment on the administrative record. The District contends that the uncontroverted evidence shows that it did not violate its Child Find responsibilities under the IDEA and did not fail to identify S.Z. for special education and related services. First, the District argues that it is entitled to summary judgment because Plaintiffs failed

to respond to its Requests for Admission and those requests therefore are deemed admitted pursuant to Federal Rule of Civil Procedure 36(a)(3). Based on their deemed admissions, the District argues, Plaintiffs cannot establish any of their claims. Alternatively, the District argues that the SEHO correctly concluded that the District met its Child Find obligations. Finally, the District submits that Plaintiffs' ADA and Section 504 claims fail because S.Z. was not denied any educational services or discriminated against because of his impairments.

In response to the District's deemed admissions' argument, Plaintiffs filed a Motion to Withdraw their Admissions under Federal Rule of Civil Procedure 36(b), arguing that the Court should permit withdrawal to allow presentation of the case on the merits. Plaintiffs also argue that they are entitled to summary judgment on their IDEA claim because the SEHO's decision was erroneous.

### A.  Requests for Admission

The District requested admission of the ultimate issues in this case, including whether S.Z. was a qualified individual under the ADA and whether he was entitled to be evaluated for special education and related services. Dkt. 38-2 at 6-9.[4] The District argues that Plaintiffs cannot establish any of their claims due to their deemed admissions.

---

[4] The District's Requests for Admission include the following:

- S.Z. is not a qualified individual under the Americans with Disabilities Act ("ADA").
- The District had no duty to provide S.Z. with special education or related services as of the September 27, 2018 Section 504 Meeting because the parent had not provided consent for evaluation.
- There was no reason for the District to suspect S.Z. was in need of special education or related services until September 18, 2018.
- The District nor any private evaluator of S.Z.'s found S.Z. eligible for special education and related services prior to November 26, 2018.

Dkt. 38-2 at 6-9.

Under Rule 36, a matter is admitted if the requesting party does not receive an answer within 30 days of the request. Fed. R. Civ. P. 36(a)(3). By failing to timely respond to the District's requests for admission, Plaintiffs admitted all of the matters in the District's requests for admission. *Id.* Once a matter is admitted under Rule 36, it is "conclusively established" unless a court permits the admission to be withdrawn. Fed. R. Civ. P. 36(b).

A court may permit withdrawal "if it would promote the presentation of the merits" of the action and if the court "is not persuaded that it would prejudice the requesting party" in defending the action on the merits. Fed. R. Civ. P. 36(b). The first prong of Rule 36(b)'s test typically is satisfied when "upholding the admissions would practically eliminate any presentation of the merits of the case." *Alvarez ex rel. Gonzalez v. Judd*, No. 1:18-CV-958-RP, 2019 WL 3412916, at *1 (W.D. Tex. July 29, 2019) (quoting *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)). Such is the case here. The matters deemed admitted bear directly on the ultimate issues in this case: whether S.Z. was entitled to be evaluated for special education and related services and whether the District violated the IDEA, ADA, and Section 504.

The District argues that withdrawal of the deemed admissions "would substantially prejudice Defendant," but fails to explain how it would be prejudiced. Dkt. 44 at 5. Courts have found that "the burden of proving a fact by evidence rather than admission is 'not the kind of prejudice contemplated by Rule 36(b).'" *Judd*, 2019 WL 3412916, at *1 (quoting *Stafford v. Estate of Hart*, 3:09CV477TSL-FKB, 2010 WL 1529316, at *1 (S.D. Miss. Apr. 14, 2010)). Rather, courts "have usually found that the prejudice contemplated by Rule 36(b) relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." *Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991). Such prejudice is not at issue here because discovery is complete and the

District seeks summary judgment on the administrative record before the SEHO. In addition, as the District acknowledges in its briefing, the District's Motion for Summary Judgment "does not rely exclusively on deemed admissions to support its dispositive motion as there is more than ample evidence to support the judgment in Defendant's favor on all issues in this suit." Dkts. 38 at 7; 44 at 5.

The Court finds that the District has failed to show that it would be prejudiced by withdrawal of Plaintiffs' deemed admissions. Accordingly, Plaintiffs' Motion to Withdraw Deemed Admissions (Dkt. 43) is **GRANTED** pursuant to Rule 36(b).

### B. IDEA Claim

Plaintiffs allege that the District violated its Child Find obligations under the IDEA by failing to timely identify S.Z. for special education and related services. Plaintiffs contend that the District ignored "a confluence of factors" putting it on notice no later than October 2018 that S.Z. needed to be tested for special education services. Dkt. 39 at 14.

As stated, the SEHO concluded that the District did not violate its Child Find obligations under the IDEA, finding that:

> The summary judgment record establishes as a matter of law that Respondent did not violate its "Child Find" responsibilities under the IDEA and did not fail to identify and evaluate [S.Z.] for special education and related services in a timely manner beginning October 5, 2017, through November 27, 2018, which is the period of Petitioner's claims, because the evidence shows that Student was not eligible for special education and related services during that time period.

Dkt. 1-32 at 5.

Plaintiffs argue that they did not receive an impartial due process hearing because the SEHO granted summary judgment before conducting a full hearing and failed to weigh the evidence in

their favor. Plaintiffs further argue that there were fact issues as to whether S.Z. was eligible for special education services and, therefore, summary judgment should not have been granted.

The SEHO conducted a full hearing on the District's motion for summary judgment, reviewed the 200 pages of exhibits in the administrative record, and heard argument from counsel before she granted the District's motion. *See* AR 1670-1722. The SEHO concluded that the summary judgment record established as a matter of law that the District did not violate the IDEA "[a]fter full consideration of the evidence and arguments submitted by the parties." Moreover, it was Plaintiffs, not the District, who bore the burden of proof in the underlying due process hearing and in this appeal of the SEHO's decision. *See Schaffer*, 546 U.S. at 62 ("The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief."); *P.P.*, 839 F. App'x 848, 857 ("Plaintiffs bore the burden in the underlying due process hearing and on district court review to establish entitlement to compensatory education."). Finally, "in IDEA proceedings, summary judgment is not directed to discerning whether there are disputed issues of fact, but rather, whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." *Seth B.*, 810 F.3d at 966. The Court finds Plaintiffs have failed to show that the SEHO denied them any process they were due.

### 1. The Child Find Provision

The IDEA's Child Find provision requires states receiving federal funds[5] to maintain policies and procedures to ensure, among other things, that: "All children with disabilities . . . who are in need of special education and related services, are [to be] identified, located, and evaluated."

---

[5] Texas receives IDEA funding, so its school districts must comply with the Child Find provision. *D.G. v. Flour Bluff Indep. Sch. Dist.*, 481 F. App'x 887, 891 (5th Cir. 2012).

20 U.S.C. § 1412(a)(3).[6] To be eligible for special education services under the IDEA, "a student

must both: (1) have a qualifying disability and (2) by reason thereof, need special education and

related services." *Alvin Indep. Sch. Dist. v. A.D. ex rel. Patricia F.*, 503 F.3d 378, 382 (5th Cir.

2007) (quoting 20 U.S.C. § 1401(3)(A)). Thus, a school district's Child Find duty "is triggered

when [it] has reason to suspect a disability coupled with reason to suspect that special education

services may be needed to address that disability." *Richard R.*, 567 F. Supp. 2d at 950. When these

suspicions arise, the local educational agency "must evaluate the student within a reasonable time

after school officials have notice of behavior likely to indicate a disability." *Id.*

Here, the parties dispute the second prong: whether S.Z. needed special education and related

services.[7] "'[N]either the IDEA nor federal regulations' define what it means to 'need' special

education and related services." *Lisa M. v. Leander Indep. Sch. Dist.*, 924 F.3d 205, 215 (5th Cir.

2019) (quoting *J.D. ex rel. J.D. v. Pawlet Sch. Dist.*, 224 F.3d 60, 66 (2d Cir. 2000)). The Fifth

Circuit has held that when addressing whether a student is eligible for special education services,

courts must consider the "unique facts and circumstances" of each case, including "parent input,

---

[6] The IDEA defines "special education" as "specially designed instruction . . . to meet the unique needs of a child with a disability." 20 U.S.C. § 1401(29).

[7] In its Reply brief, the District argues that "[t]his is a Child Find case, not an eligibility case, as Plaintiffs did not exhaust the issue of eligibility." The District appears to argue that the Court should not consider the issue of eligibility. Dkt. 46 at 2. However, the District would be liable for failing to fulfill its Child Find obligations only if S.Z. was eligible for such services in the first place. *See Flour Bluff*, 481 F. App'x at 891, 893 (stating that "the IDEA does not penalize school districts for not timely evaluating students who do not *need* special education"); *D.H.H. ex rel. Rob Anna H. v. Kirbyville Consol. Indep. Sch. Dist.*, No. 1:18-CV-00120-MAC, 2019 WL 5390125, at *6 (E.D. Tex. July 12, 2019) ("[I]f a student does not need special education and does not qualify as a child with a disability under the IDEA, a school district does not violate the IDEA if it declines to provide special education to which the student is not entitled."), *R. & R. adopted*, 2019 WL 4052200 (E.D. Tex. Aug. 27, 2019), *appeal filed*, No. 20-40315 (5th Cir. Apr. 27, 2020). Moreover, the SEHO addressed the eligibility issue in her decision when she concluded that the District did not violate its Child Find obligations "because the evidence shows that Student was not eligible for special education and related services during that time period." Dkt. 1-32 at 5; *see also T.W.*, 2019 WL 1102380, at *4 ("T.W.'s eligibility for special education *was* before the SEHO. Indeed, all of T.W.'s claims turn on whether or not T.W. was eligible for special education, and it is unclear why T.W. believes the SEHO acted improperly by reaching the issue of T.W.'s eligibility for services."). Accordingly, the issue of eligibility is relevant to whether the District met its Child Find obligations under the statute.

and teacher recommendations, as well as information about the child's physical condition, social or cultural background, and adaptive behavior," as well as grades and test scores. *Alvin*, 503 F.3d at 383 (citing 34 C.F.R. § 300.306(c)(1)(i)). The Fifth Circuit also has clarified that "need" should not be measured according to "whether or not [a student's] potential could be maximized via special education services." *Id.* at 384 n.9.

### 2. S.Z. Was Not Eligible for Special Education Services While He Was a Student at HCISD

Plaintiffs have not demonstrated by a preponderance of the evidence that the District violated its Child Find obligations under the IDEA.

#### a. 2017-2018 School Year

As noted, a school district's Child Find duty is triggered when it has reason to suspect that special education services may be needed to address a student's disability. *Richard R.*, 567 F. Supp. 2d at 950. Plaintiffs assert that "the District had notice no later than the end of March 2018" that S.Z. needed special education services, based on the following: Plaintiffs' March 8, 2018 email to the Vice Principal notifying the District that S.Z. had been diagnosed with ADHD and requesting a Section 504 meeting; S.Z.'s frequent absences and nurse visits for headaches and stomachaches; Santa-Ana's March 19, 2018 letter that S.Z. should receive Section 504 accommodations; and Dr. Fournier's March 7, 2018 letter that S.Z. should rest if he has headaches. Dkt. 42 at 4. Although Plaintiffs and S.Z's medical providers requested Section 504 accommodations, they did not request special education and related services in March 2018.

The District held a Section 504 meeting on March 25, 2018 and implemented the following accommodations for S.Z.: individualized structured reminders, extra time for turning in assignments, preferential seating, short breaks when feeling overwhelmed, checks to make sure he was understanding the material, reminders to stay on task, notetaking assistance, and extra time to

take the STAAR tests. AR 1039-41. Plaintiffs complain that the Section 504 accommodations were insufficient and contend that the District should have provided S.Z. with special education services at that time. As noted, however, in March 2018, Plaintiffs requested only Section 504 accommodations, not special education and related services. *See Ashley G. v. Copperas Cove Indep. Sch. Dist.*, No. 6:19-CV-00420-ADA, 2021 WL 1840910, at *7 (W.D. Tex. May 7, 2021) (noting that a school district is deemed to have knowledge that a student may require special education services when "the parent of the child has expressed concern in writing to the school that the child is in need of special education services").

A school district, moreover, does not commit a Child Find violation merely because it pursues § 504 accommodations before pursuing a special education evaluation. *Spring Branch Indep. Sch. Dist. v. O.W. by Hannah W.*, 961 F.3d 781, 794 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1389 (2021).

> Though compliance with § 504 does not absolve a school district of its duty to comply with the IDEA, we do recognize that there may be cases where intermediate measures are reasonably implemented before resorting to evaluation. . . . "[S]chools need not rush to judgment or immediately evaluate every student exhibiting below-average capabilities, especially at a time when young children are developing at different speeds and acclimating to the school environment."

*Id.* (quoting *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 252 (3d Cir. 2012)); *see also Ashley G.*, 2021 WL 1840910, at *8 ("It is reasonable for a School District to try intermediate measures such as section 504 plans to treat behaviors of students that are 'typical' of other students their age.").

The record shows that the District's Section 504 accommodations were sufficient to address S.Z.'s educational needs while he was a middle school student at HCISD during the 2017-2018 school year. Although S.Z. continued to miss some school due to headaches and nausea in April and May 2018, medical records show that he was "working well on current medication," had no

depressive feelings, was "doing better" in school, and had only "mild stress due to educational concerns." AR 1374. *See Alvin*, 503 F.3d at 384 (finding that student did not qualify for special education services where student was demonstrating social and behavioral success).

In addition, S.Z. received all As and Bs on his final report card for the 2017-2018 school year, including in his advanced placement courses. AR 1046. Specifically, S.Z.'s final grades from the 2017-2018 school year were 95 in Pre-AP U.S. History, 93 in Pre-AP English Language Arts, 100 in Web Design, 98 in Journalism, 95 in Introduction to Coding, 99 in Health, 87 in Pre-AP Science, 83 in Pre-AP Algebra 1, and 88 in GTT IV. *Id.* "This success in general education classes cuts against placement in special education." *A.L. v. Alamo Heights Indep. Sch. Dist.*, No. SA-16-CV-00307-RCL, 2018 WL 4955220, at *6 (W.D. Tex. Oct. 12, 2018); *see also See Rowley*, 458 U.S. at 207 n.28 ("[T]he achievement of passing marks and advancement from grade to grade will be one important factor in determining educational benefit."); *C.M. ex rel. Jodi M. v. Dep't of Educ., State of Hawaii*, 476 F. App'x 674, 677 (9th Cir. 2012) (affirming decision of state agency that child "did not require special education services because she was able to perform and compete successfully in general education classes").

S.Z. also scored "Masters" level on his 2018 STAAR tests in reading, social studies, and science. His 2018 STAAR reading assessment results "showed expected progress for 1 year of instruction," AR 1045, and his Lexile reading scores showed that he exceeded his expected grade level range. Succeeding on standardized tests is another factor that shows a school district's accommodations were sufficient. *See Alvin*, 503 F.3d at 384 (affirming district court's decision that child did not need special education services, in part, because of his "passing grades and success" on standardized tests); *Ashley G.*, 2021 WL 1840910, at 7 (finding that school district did not have reason to suspect student who had been diagnosed with ADHD, anxiety, and depression

needed special education services where student passed all classes and STAAR tests the two years before); *D.H.H.*, 2019 WL 5390125, at *11 (finding that administrative record showed student's academic success was not significantly impacted by emotional disturbance or learning disability).

Plaintiffs attempt to rely on hindsight evidence to support their claim that the District should have evaluated S.Z. for special education services in March 2018. Specifically, Plaintiffs rely on Dr. Robillard's report in January 2019 recommending that S.Z. receive "student support services" for his new diagnoses of generalized anxiety disorder, major depressive disorder, dysgraphia, ODD, and OCD. AR 1100, 1117. Plaintiffs also rely on the fact that S.Z.'s new charter school found him eligible for special education services on July 26, 2019. AR 1270-71. Plaintiffs argue that "[t]he Hearing Officer should have then drawn the reasonable inference that if Student had multiple disabilities in February 2019, he likely had these disabilities in 2018, where there was ample evidence that he was struggling greatly with the very symptoms of those disabilities." Dkt. 39 at 11.

"But we do not judge a school district's determination in hindsight. Rather, we consider whether there was a present need for special education services." *D. L. by & through J.L. v. Clear Creek Indep. Sch. Dist.*, 695 F. App'x 733, 738 (5th Cir. 2017), *as revised* (July 31, 2017). In *D. L.*, the Fifth Circuit explained that the eligibility question on review is whether a student had a "present need for special education services," such that the reviewing court should not "judge a school district's determination in hindsight." *Id.* In *Lisa M.*, the Fifth Circuit reiterated that reasoning and determination:

> While judicial review unavoidably looks backward, our task is to assess eligibility with the information available to the [admission, review, and dismissal] committee at the time of its decision. An erroneous conclusion that a student is ineligible for special education does not somehow become acceptable because a student subsequently succeeds. Nor does a proper finding that a student is

ineligible become erroneous because the student later struggles. Subsequent events do not determine ex ante reasonableness in the eligibility context.

***

[E]ligibility is a snapshot of the student's condition at the time of the eligibility determination. At the eligibility determination moment, therefore, incorporating events that occur afterwards would be incongruous and, indeed, can only invite Monday morning quarterbacking.

924 F.3d at 214-15; *see also L.J. ex rel. Hudson v. Pittsburg Unified Sch. Dist.*, 850 F.3d 996, 1004 (9th Cir. 2017) (holding that review of a school district's eligibility determination should be assessed "at the time of the child's evaluation and not from the perspective of a later time with the benefit of hindsight"). Accordingly, the Court will not consider hindsight evidence.

Based on the foregoing, the District's Section 504 accommodations were sufficient to address S.Z.'s educational needs through the end of the 2017-2018 school year. *See Flour Bluff*, 481 F. App'x at 892-93 (finding that student did not require special education services where his Section 504 classroom accommodations adequately dealt with the student's behavioral problems and academic progress).

### b. Fall 2018

A few days after S.Z. began his freshman year at Hays High School, he was diagnosed with generalized anxiety disorder. Dkt. 1-24 at 3. On September 18, 2018, Plaintiffs asked the District to evaluate S.Z. for special education and related services. AR 1073.

Once a school district receives a request for a special education evaluation, the school district must, not later than the 15th school day, provide the parent with an opportunity to give written consent for the evaluation or provide the parent with notice of its refusal to conduct the evaluation. 19 TEX. ADMIN. CODE § 89.1011(b). Once the consent form is signed by the parent, state law requires a written report of a full individual and initial evaluation within 45 days. *Id.*

§ 89.1011(c)(1). Plaintiffs complain that the District "unreasonably delayed complying with the Child Find duty for a minimum of seven months." Dkt. 39 at 16. But the only delay in conducting the evaluation was caused by the Plaintiffs, who refused to provide the District with consent to perform the evaluation until April 3, 2019. AR 1122. The District contacted Plaintiffs repeatedly between September 25, 2018 and October 8, 2018 to obtain their written consent, which Plaintiffs refused to give. Dkt. 38-3, Zamora Dep. 54:11-16, 68:13-20; AR 1071-72, 1074.

Accordingly, the Court finds that the District did not unreasonably delay in evaluating S.Z. for special education services. *See Flour Bluff*, 481 F. App'x at 893 (finding that school district did not violate Child Find obligation where parents failed to give district consent to perform evaluation); *Ahsley G.*, 2021 WL 1840910, at *9 (finding that any delay in performing the FIE was due to parents' failure to sign consent forms); *Doe v. Cape Elizabeth Sch. Dep't*, 382 F. Supp. 3d 83, 104-05 (D. Me. 2019) (finding that school district did not violate its Child Find duty where parents prevented both the evaluation and determination from occurring during the required time frame by not making the student available for the evaluation).

Because Plaintiffs failed to consent to special education testing, the District held another Section 504 meeting on September 27, 2018. The District found that S.Z. did not qualify for special education and related services at that time and that the following Section 504 accommodations would address his educational needs: extra time to complete assignments, preferential seating, reminders to stay on task, daily check-ins with a campus counselor, a teacher or staff member to discuss his anxiety, breaks when feeling overwhelmed, access to the counselor, and access to a water bottle. AR 1063-65.

Plaintiffs contend that these accommodations were insufficient and that the District should have provided S.Z. with special education services in September 2018. In support of this argument,

Plaintiffs cite only the hindsight evidence discussed above and a September 21, 2018 letter from S.Z.'s PA stating that S.Z. recently had been diagnosed with generalized anxiety disorder and headaches and should receive Section 504 accommodations, which the District implemented. AR 1060. The letter did not recommend that S.Z. receive special education services. Moreover, "there is no presumption in favor of outside evaluators." *D.L.*, 565 F. App'x at 737; *see also Christopher M. ex rel. Laveta McA. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285, 1292 (5th Cir. 1991) (declining to "create any presumption in favor of the testimony of the child's treating physician"); *Alvin*, 503 F.3d at 384 (agreeing with district court that teachers' testimony was more reliable than physicians'). Accordingly, the letter is insufficient to show that the accommodations were inadequate or that the District failed to fulfill its Child Find obligations under the IDEA.

On November 14, 2018, Plaintiffs withdrew S.Z. from HISD and he began attending Wayside Charter School, which then became responsible for providing him with a FAPE. On June 10, 2019, after Plaintiffs provided the District with consent to test S.Z., the District determined that S.Z. was not eligible for special education and related services during the relevant time period.

Based on the foregoing, the SEHO determined that the District did not violate its Child Find duties under the IDEA by failing to evaluate S.Z. for special education and related services between October 5, 2017 and November 27, 2018. After consideration of the SEHO's decision, the administrative record on which it relies, the additional summary judgment evidence, and the arguments made by the parties, the Court finds that the District complied with the IDEA and adequately addressed S.Z.'s educational needs during the relevant time period.

### C. Plaintiffs' ADA and Section 504 Claims

Finally, Plaintiffs allege that the District discriminated against S.Z. in violation of the ADA and Section 504 by failing to provide services and benefits due to him under law, that is, special education and related services. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of . . . his disability, be excluded from the participation, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Because the terms of the ADA and Section 504 are so similar, courts evaluate a plaintiff's claims under the statutes together. *D.A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010).

To recover compensatory damages under the ADA or Section 504, a plaintiff must demonstrate intentional discrimination. *D.A.*, 629 F.3d at 454. To demonstrate disability discrimination in an educational context, "something more than a mere failure to provide a fair, appropriate public education required by [IDEA] must be shown." *Id.* (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir.1982)).

> [F]acts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under § 504 or ADA against a school district predicated on a disagreement over compliance with IDEA.
>
> ***
>
> [A student's] mere disagreement with the correctness of the educational services rendered to him does not state a claim for disability discrimination.

*Id.* at 455.

Because the gravamen of Plaintiffs' Section 504 and ADA claims is that the District failed to provide S.Z. with special education and related services under the IDEA and the Court has determined that there was no IDEA violation, Plaintiffs have failed to state a viable intentional discrimination claim under either statute. *See id.* ("[I]t could be argued that D.A. has no cognizable claim under § 504 or the ADA because the gravamen of his disagreement is the district's failure to diagnose his disability at an appropriate age."); *Ashley G.*, 2021 WL 1840910, at *12 ("Resolving IDEA claims in favor of the school district precludes a plaintiff's redundant claims under the ADA and § 504 when those claims are based on the district's alleged IDEA violations.").

## IV.    Conclusion

Based on the foregoing, the Court **GRANTS** Plaintiffs' Motion to Withdraw Deemed Admissions (Dkt. 43). The Court **FURTHER GRANTS** Hays Consolidated Independent School District's Motion for Judgment on the Administrative Record and Motion for Summary Judgment (Dkt. 38) and **DENIES** Plaintiffs' Motion for Summary Judgment Pursuant to the Administrative Record and Additional Evidence and Brief in Support (Dkt. 39). The Court will enter Final Judgment in favor of Hays Consolidated Independent School District in a separate order.

**SIGNED** on June 20, 2021.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE